UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Case No.:

PARKER JOHN DETWEILER,

        Plaintiff,

vs.

VINCENT SPARACINO, individually,
ANGELA DRISCOLL, individually, KEVIN
J. RAMBOSK, as SHERIFF OF COLLIER
COUNTY, Florida, and AZN RESTAURANTS,
INC., a Florida corporation,

        Defendants.

_____/

**COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

    1.     This is a civil action seeking money damages in excess of $15,000 dollars, exclusive

of costs, interest, and attorney's fees, against VINCENT SPARACINO, individually, ANGELA

DRISCOLL, individually, KEVIN J. RAMBOSK, as SHERIFF OF COLLIER COUNTY, Florida,

and AZN RESTAURANTS, INC., a Florida corporation.

    2.     This action is brought pursuant to 42 U.S.C. § 1983 and § 1988, and the First, Fourth

and Fourteenth Amendments to the United States Constitution.  The United States District Court for

the Middle District of Florida has jurisdiction of this action under 42 U.S.C. § 1983, 28 U.S.C. §

1331 and 28 U.S.C. § 1343.   Plaintiff further invokes the supplemental jurisdiction of the United

States District Court to hear pendant State tort claims arising under State law, pursuant to 28 U.S.C.

§ 1367(a).

    3.     Plaintiff has fully complied with all conditions precedent to bringing this action

imposed by the laws of the State of Florida, and particularly by the provisions of §768.28 of the Florida Statutes.

## PARTIES

4.      Plaintiff PARKER JOHN DETWEILER is a citizen and resident of Jefferson County, Alabama.

5.      At all times referred to herein, Defendant VINCENT SPARACINO [hereinafter SPARACINO or Defendant SPARACINO] was a deputy sheriff for KEVIN J. RAMBOSK, as SHERIFF OF COLLIER COUNTY, Florida, and was acting under color of law, and in such capacity as an agent, employee, or servant of KEVIN J. RAMBOSK, as SHERIFF OF COLLIER COUNTY, Florida.

6.      At all times referred to herein, Defendant ANGELA DRISCOLL [hereinafter DRISCOLL or Defendant DRISCOLL] was a supervisory corrections deputy holding the rank of sergeant, and was acting under color of state law, as an agent, employee, or servant of KEVIN J. RAMBOSK, as SHERIFF OF COLLIER COUNTY, Florida.

7.      Defendant KEVIN J. RAMBOSK, as SHERIFF OF COLLIER COUNTY, Florida, [hereinafter Defendant COLLIER COUNTY SHERIFF'S OFFICE or Defendant KEVIN J. RAMBOSK, as SHERIFF OF COLLIER COUNTY, Florida] is the SHERIFF of COLLIER COUNTY, Florida.  In this cause, Defendant COLLIER COUNTY SHERIFF'S OFFICE acted through its agents, employees, and servants, including Defendant SPARACINO, Defendant DRISCOLL, and others.

8.      Defendant AZN RESTAURANTS, INC., [hereinafter AZN or Defendant AZN], is a Florida corporation regularly transacting business in Naples, Collier County, state of Florida, with its principle place of business located at 9118 Strada Place, Naples, Collier County, Florida.  In this

cause, Defendant AZN acted through its agents, employees, and servants, including its managers, and others.

9.      Plaintiff sues Defendant SPARACINO and Defendant DRISCOLL in their individual capacities.

## FACTS

10.     On May 29, 2915, Plaintiff, his fiancé, and a group of friends (a total of approximately eight persons) attended a cooking class at Sur La Table, located at Mercato.

11.     At all times material hereto, Mercato was a shopping and dining destination with approximately twenty (20) or more restaurants, including an establishment owned by Defendant AZN Restaurants, Inc., and operating under the fictitious name AZN Azian Cuizine, located at 9118 Strada Place, Naples, Collier County, Florida.

12.     After the cooking class, Plaintiff and others from the cooking class moved to AZN Azian Cuizine for drinks and appetizers.

13.     The group remained at AZN for approximately 60 minutes.  During that time, the bill for the group exceeded $400.00.

14.     At approximately 10:22 pm, Defendant KEVIN J. RAMBOSK, as SHERIFF OF COLLIER COUNTY, Florida, was notified by Defendant AZN that there were several intoxicated subjects refusing to leave after being cut off.

15.     At all times material hereto, Plaintiff was twenty-four (24) years old, 6' 6" tall, and approximately 195 lbs.

16.     In the preceding 5-6 hours, Plaintiff consumed parts of 3-4 beers.  He was not drunk or intoxicated, and had not lost the power of self-control with respect to alcohol use.

17.     When the group was requested to leave AZN, Plaintiff ushered the group outside and

requested that they remain outside while he paid for the entire bar and food tab of over four-hundred ($400) dollars (including a tip).

18.     Plaintiff paid and apologized for the conduct of the member of his group who was disruptive and exited the front door of the business, at which time Collier County Sheriff's Deputy William McClelland and Defendant SPARACINO arrived.

19.     Plaintiff was requested by Defendant SPARACINO and Deputy McClelland to walk away from the entrance to the business, and complied.

20.     Defendant SPARACINO then subjected Plaintiff to involuntary civil commitment under Florida Statute § 397.675, the "Hal S. Marchman Alcohol and Other Drug Services Act of 1993" [hereinafter "Marchman Act"] without conducting a reasonable investigation, and in the absence of probable cause that Plaintiff fit the criteria for involuntary civil commitment and protective custody.

21.     At the time of Plaintiff's involuntary civil commitment, Plaintiff was not in possession of alcohol or seeking alcohol, and as such, it would have been plainly obvious to any reasonable law-enforcement officer in the position of Defendant SPARACINO that there was a lack of probable cause to believe that Plaintiff was unable or unwilling to stop drinking (i.e., had lost the power of self-control with respect to substance use, e.g. alcohol), and therefore, in need of protective custody, or otherwise a danger to himself or any other person. *Roberts v. Spielman*, 643 F.3d 899, 905 (11th Cir. 2011) ("When an officer stops an individual to ascertain that person's mental state (rather than to investigate suspected criminal activity), the Fourth Amendment requires the officer to have probable cause to believe the person is dangerous either to himself or others").

22.     No other person in Plaintiff's group (all of whom had been consuming alcohol and were asked to leave AZN) was taken into protective custody or subjected to confinement in the

Collier County Jail.

23.    At all times material hereto, Plaintiff was not drunk or intoxicated and repeatedly and continually requested a breach alcohol test, but was refused by Defendant SPARACINO.

24.    At all times material hereto, it was the policy of Defendant KEVIN J. RAMBOSK, as SHERIFF OF COLLIER COUNTY, Florida, to hold all persons taken into custody under the Marchman Act for a minimum of eight (8) hours or until their breath alcohol level is less than .08 BAC, as measured by a hand held Intoxilyzer S-D5.

25.    Plaintiff was received into the Collier County Jail at 11:02 pm and placed into a jail cell in the booking area of the jail.

26.    At all times material hereto, Defendant DRISCOLL was the supervisor for the Collier County Jail booking area.

27.    At all times material hereto, Plaintiff continued to verbally protest his incarceration and request a breath alcohol test.

28.    At 11:20 pm, Plaintiff was observed by Defendant DRISCOLL inside his assigned jail cell, and was described by Defendant DRISCOLL as walking about calmly, talking, and okay.

29.    At all times material hereto, Plaintiff continued to protest to Defendant DRISCOLL (and others) that he was not intoxicated or drunk and would agree to breath alcohol testing.

30.    In retaliation for Plaintiff's verbal protests, including but not limited to Plaintiff's request for a breath alcohol test, Plaintiff was denied a breath alcohol test by Defendant DRISCOLL, as a consequence thereof, remained incarcerated and was not released from the Collier County Jail until 7:12 am (i.e., for eight (8) hours).

31.    The conduct of Defendant SPARACINO and Defendant DRISCOLL, as set forth herein, occurred under color of state law.

**CAUSES OF ACTION**

**COUNT I**
**FOURTH AMENDMENT CLAIM AGAINST DEFENDANT SPARACINO,**
**INDIVIDUALLY, COGNIZABLE UNDER 42 U.S.C. § 1983**

For his cause of action against Defendant SPARACINO, individually, in Count I, Plaintiff states:

32.     Plaintiff realleges and adopts, as if fully set forth in Count I, the allegations of paragraphs 1 through 31.

33.     Defendant SPARACINO proximately caused Plaintiff's involuntary civil commitment under the Marchman Act in the absence of probable cause to believe that Plaintiff fit the criteria for involuntary commitment and protective custody under Florida Statute § 397.675.

34.     The conduct of Defendant SPARACINO towards Plaintiff was objectively unreasonable and violated Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983 to be free from involuntary civil commitment and protective custody in the absence of probable cause.

35.     As a direct and proximate result of the acts described above, in violation of 42 U.S.C. § 1983, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, and mental suffering.

36.     As a further direct and proximate result of the conduct of Defendant SPARACINO, Plaintiff suffered loss of liberty and freedom, mental and emotional pain and suffering, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's clearly established civil rights. Plaintiff has also agreed to pay the undersigned a reasonable fee for his services herein.

WHEREFORE, Plaintiff prays:

i.      Judgment for compensatory damages in excess of $ 15,000 dollars;

    ii.      Judgment for punitive damages;

    iii.     Cost of suit;

    iv.     Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

    v.      Trial by jury as to all issues so triable; and

    vi.     Such other relief as this Honorable Court may deem just and appropriate.

## COUNT II
## PLAINTIFF'S CUSTOM, POLICY AND PRACTICE CLAIM AGAINST DEFENDANT KEVIN J. RAMBOSK, AS SHERIFF OF COLLIER COUNTY, FLORIDA

For his cause of action against Defendant KEVIN J. RAMBOSK, as SHERIFF OF COLLIER COUNTY, Florida, in Count II Plaintiff states:

37.     Plaintiff realleges and adopts, as if fully set forth in Count II, the allegations of paragraphs 1 through 31.

38.     At all times material hereto, Defendant SPARACINO was acting under the direction and control of Defendant KEVIN J. RAMBOSK, as SHERIFF of COLLIER COUNTY, Florida, and pursuant to the policies, customs, or widespread practices of Defendant KEVIN J. RAMBOSK, as SHERIFF of COLLIER COUNTY, Florida.

39.     Between 1997 and 2002, the percentage of all persons admitted into the Collier County Jail who were not accused of a crime, and instead, were subjected to involuntary civil commitment or protective custody under the Marchman Act, ranged from 8.86% in 1997 to 14.35% in 2002.

40.     In 2002, Greg Stakey was taken into protective custody under the Marchman Act and admitted into the Collier County Jail.

41.     On April 6, 2007, a jury in United States District Court, Fort Myers, Florida, found that Stakey was subjected to involuntary civil commitment in violation of his constitutional rights

under the Fourth Amendment by Amy Stanford, a deputy sheriff for Defendant COLLIER COUNTY SHERIFF'S OFFICE.

42.    Final judgment was entered against Amy Stanford and Defendant COLLIER COUNTY SHERIFF'S OFFICE in the amount of $250,000.00.

43.    At all times material hereto, the written policies, or the practices and customs of Defendant COLLIER COUNTY SHERIFF'S OFFICE were not changed in the aftermath of the verdict in *Stakey*, notwithstanding the fact that 14.35% of all admissions into the Collier County Jail in 2002 were pursuant to the protective custody provisions of the Marchman Act.

44.    Between 2010 and 2015, Defendant COLLIER COUNTY SHERIFF'S OFFICE, continued to subject substantial numbers of persons to involuntary civil commitment pursuant to the protective custody provisions of the Marchman Act:

| Year | Total Number of all Admissions into the Collier County Jail | Total Number of Admissions into the Collier County Jail under the Marchman Act | Percentage of all Admissions into the Collier County Jail under the Marchman Act |
|------|------|------|------|
| 2010 | 13,866 | 1,050 | 8.57% |
| 2011 | 12,085 | 847 | 7.01% |
| 2012 | 11,812 | 852 | 7.21% |
| 2013 | 11,879 | 846 | 7.12% |
| 2014 | 11,327 | 875 | 7.72% |

45.    At all times material hereto, it was the official policy, or practice and custom of Defendant COLLIER COUNTY SHERIFF'S OFFICE to adopt policies, practices, or customs for determining whether persons fit the criteria for civil commitment and protective custody.

46.    At all times material hereto, it was the official policy, or the practice and custom of

Defendant COLLIER COUNTY SHERIFF'S OFFICE that persons taken into protective custody and subjected to confinement in the Collier County Jail under the Marchman Act were only subjected to "temporary detention" under the Fourth Amendment since persons taken into custody under the Marchman Act are generally released by Defendant COLLIER COUNTY SHERIFF'S OFFICE after eight (8) hours, or unless their breath alcohol level was determined to be less than .08 BAC, as measured by a hand held Intoxilyzer S-D5.

47.    At all times material hereto, it was the official policy, or the practice and custom of Defendant COLLIER COUNTY SHERIFF'S OFFICE that because persons taken into protective custody and transported to the Collier County Jail under the Marchman Act were only subjected to a *Terry*-stop (i.e., temporary detention) under the Fourth Amendment, only "a reasonable good faith belief" was required to support their continued detention, not probable cause.

48.    At all times material hereto, the official policy, or the practice and custom of Defendant COLLIER COUNTY SHERIFF'S OFFICE of requiring only "a reasonable good faith belief" to support the incarceration of persons in the Collier County Jail under the Marchman Act (in most cases for a minium of eight (8) hours) was unconstitutional, insofar as the Fourth Amendment requires probable cause (not reasonable suspicion),based on objective criteria (not subjective, or good faith beliefs).

49.    On May 4, 2017, in the matter of *Asha Osman v. Steven Dehaan, individually, Kevin J. Rambosk, as Sheriff of Collier County, Florida, and Northwood Hospitality LLC, a Foreign limited liability corporation*, Middle District of Florida Case No.: 2:16-cv-0488-UA-CM, Defendant, KEVIN J. RAMBOSK, as SHERIFF OF COLLIER COUNTY, Florida, was requested to provide deposition testimony pursuant to Fed. R. Civ. P. 30(b)6.

50.    Pursuant to Fed. R. Civ. P. 30(b)6, Defendant, KEVIN J. RAMBOSK, as SHERIFF

OF COLLIER COUNTY, Florida, designated Commander Michael J. Williams, a command staff

level employee of Defendant KEVIN J. RAMBOSK, as SHERIFF OF COLLIER COUNTY,

Florida), who testified as follows:

> Q:      Have you, to your knowledge, ever trained any of your deputies that for purposes of the 4th Amendment of the United States Constitution, any seizure of a person . . . , whether for a criminal violation or based upon some sort of involuntary civil commitment procedure, either Baker Act or the Marchman Act, must be based on probable cause, not a good faith belief that the person meets the criteria of the statutory framework?
>
> A:      No, because that is not correct.  We do detentions based on reasonable suspicion of *Terry* stop, which is a detention and a seizure, but it does not require probable cause.

51.      Based on information and belief, the Collier County Jail serves as a *de facto* drunk

tank for persons who come to the attention of law enforcement, regardless of whether there is

probable cause the person is drunk or intoxicated, and instead, the determination of whether a person

is taken into protective custody is left to the *subjective* belief of the law enforcement officer, based

on a reasonable suspicion standard (not probable cause), contrary to the requirements fo the Fourth

Amendment.

52.      The official policies, or the practice and custom of Defendant COLLIER COUNTY

failures of Defendant KEVIN J. RAMBOSK, as SHERIFF OF COLLIER COUNTY, Florida, as set

forth herein, was unconstitutional, and constitutes deliberate indifference to the constitutionally

rights of Plaintiff and others under the Fourth and Fourteenth Amendment.

53.      In the aftermath of the verdict in *Stakey*, and in light of the unusually high number

of persons subjected to involuntary civil commitment and protective custody, Defendant KEVIN J.

RAMBOSK, as SHERIFF OF COLLIER COUNTY, Florida, had actual notice of the failures set

forth herein, including a annual report setting forth the number of persons subjected to protective

custody, and failed or refused to correct its unconstitutional policies, or practices and customs, including but not limited to the policy, practice, or custom of allowing persons to be placed in into protective custody under the Marchman Act based on a reasonable suspicion standard, and requiring only a subjective "good faith belief" on the part of the law enforcement officer instead of probable cause based on reasonably trustworthy information.

54.    As a proximate cause of the official policies, or the practice and customs of Defendant KEVIN J. RAMBOSK, as SHERIFF OF COLLIER COUNTY, Florida, Plaintiff was subjected to protective custody under the Marchman Act in the absence of probable cause that Plaintiff fit the criterial for involuntary civil commitment, contrary to the Fourth and Fourteenth Amendment, and 42 U.S.C. § 1983.

55.    As a direct and proximate result of the acts described above, in violation of 42 U.S.C. § 1983, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, and mental suffering.

56.    As a further direct and proximate result of the conduct of  Defendant KEVIN J. RAMBOSK, as SHERIFF OF COLLIER COUNTY, Florida, Plaintiff suffered loss of liberty and freedom, mental and emotional pain and suffering, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's clearly established civil rights.   Plaintiff has also agreed to pay the undersigned a reasonable fee for his services herein.

WHEREFORE, Plaintiff prays:

      i.    Judgment for compensatory damages in excess of $ 15,000 dollars;

      ii.    Cost of suit;

      iii.    Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

iv.     Trial by jury as to all issues so triable; and

v.      Such other relief as this Honorable Court may deem just and appropriate.

## COUNT III
## FIRST AMENDMENT RETALIATION CLAIM AGAINST
## DEFENDANT DRISCOLL, INDIVIDUALLY, COGNIZABLE UNDER 42 U.S.C. § 1983

For his cause of action against Defendant DRISCOLL, individually, in Count III, Plaintiff states:

57.     Plaintiff realleges and adopts, as if fully set forth in Count III, the allegations of paragraphs 1 through 31.

58.     At all times material hereto, it was clearly established law that the freedom of individuals verbally to oppose or challenge the actions and decisions of law enforcement officials without risking retaliation is one of the principal characteristics by which we distinguish a free nation from a police state.

59.     At all times material hereto, it was clearly established that words and actions are protected under the First Amendment unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.

60.     At all times material hereto, Plaintiff was not drunk or intoxicated and repeatedly and continually requested a breach alcohol test while incarcerated in the Collier County Jail, but was refused by Defendant DRISCOLL, as well as her subordinates.

61.     At all times material hereto, it was the policy of Defendant KEVIN J. RAMBOSK, as SHERIFF OF COLLIER COUNTY, Florida, to hold all persons taken into custody under the Marchman Act for a minimum of eight (8) hours or until their breath alcohol level is less than .08 BAC, as measured by a hand held Intoxilyzer S-D5.

62.     Plaintiff was received into the Collier County Jail at 11:02 pm and placed into a jail cell in the booking area.

63.     At all times material hereto, Defendant DRISCOLL was assigned to the Collier County Jail booking area, and was the supervisory official responsible for Plaintiff's care, custody, and control, as well as the supervision of subordinate corrections officers working in the booking area.

64.     At all times material hereto, Plaintiff continued to verbally protest his incarceration and request a breath alcohol test.

65.     At 11:20 pm, Plaintiff was personally observed by Defendant DRISCOLL while Plaintiff was alone inside his assigned jail cell, and was described by Defendant DRISCOLL as walking about calmly, *talking*, and okay.

66.     At all times material hereto, Plaintiff was *talking* about the fact the was not drunk or intoxicated, was protesting his incarceration, and stating unequivocally that he would agree to breath alcohol testing, and as such, Defendant DRISCOLL had actual knowledge of Plaintiff's verbal protests, including his claim that he was not drunk or intoxicated and would agree to breath alcohol testing.

67.     Every reasonable corrections officer in the position of Defendant DRISCOLL would have known Plaintiff appeared upset that he was not offered the opportunity to take a breath test, and did not appear drunk or intoxicated, insofar as Plaintiff had the ability to hear, see, walk, and talk, and was otherwise oriented as to time, place, and person, and was not seeking alcohol.

68.     At all times material hereto, Plaintiff was *talking* about the fact the was not drunk or intoxicated, was protesting his incarceration, and stating unequivocally that he would agree to breath alcohol testing, and as such, Defendant DRISCOLL had actual knowledge of Plaintiff's verbal protests, including his claim that he was not drunk or intoxicated and would agree to breath alcohol testing.

69.     Defendant DRISCOLL had the ability to administer a breath alcohol test to Plaintiff, but in retaliation for Plaintiff's continued and persistent protests refused to do so, and as a consequence thereof, as Defendant DRISCOLL knew, Plaintiff remained incarcerated for a minimum of eight (8) hours and was not released from the Collier County Jail at 7:12 am.

70.     The conduct of Defendant DRISCOLL, in retaliation for Plaintiff's exercise of his rights under the First Amendment, would likely to deter a person of ordinary firmness from the exercise of First Amendment rights.  The conduct of Defendant DRISCOLL towards Plaintiff constitutes unlawful retaliation in violation of Plaintiff's clearly established rights under the First and Fourteenth Amendments, and 42 U.S.C. § 1983.

71.     As a direct and proximate result of the acts described above, in violation of 42 U.S.C. § 1983, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, and mental suffering.

72.     As a further direct and proximate result of the conduct of  Defendant DRISCOLL, Plaintiff suffered loss of liberty and freedom, mental and emotional pain and suffering, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's clearly established civil rights.  Plaintiff has also agreed to pay the undersigned a reasonable fee for his services herein.

WHEREFORE, Plaintiff prays:

      i.      Judgment for compensatory damages in excess of $ 15,000 dollars;

      ii.      Judgment for exemplary damages;

      iii.      Cost of suit;

      iv.      Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

      v.      Trial by jury as to all issues so triable; and

vi.     Such other relief as this Honorable Court may deem just and appropriate.

## COUNT IV
## FALSE ARREST/FALSE IMPRISONMENT CLAIM AGAINST DEFENDANT
## KEVIN J. RAMBOSK, AS SHERIFF OF COLLIER COUNTY, FLORIDA

For his cause of action against Defendant KEVIN J. RAMBOSK, as SHERIFF OF COLLIER

COUNTY, Florida, in Count IV, Plaintiff states:

73.     Plaintiff realleges and adopts, as if fully set forth in Count IV, the allegations of

paragraphs 1 through 31.

74.     Defendant SPARACINO proximately caused Plaintiff's civil commitment in the

absence of probable cause to believe that Plaintiff fit the criteria for involuntary commitment or

protective custody under Florida Statute § 397.675.

75.     The actions of Defendant SPARACINO constitute false arrest/false imprisonment of

Plaintiff under Florida law.

76.     The false arrest/false imprisonment of Plaintiff was committed by Defendant

SPARACINO in the course and scope of his employment as a deputy sheriff for Defendant KEVIN

J. RAMBOSK, as SHERIFF OF COLLIER COUNTY, Florida.

77.     As a direct and proximate result of the acts described above, Plaintiff has suffered

grievously, has been brought into public scandal, and with great humiliation, and mental suffering.

78.     As a further direct and proximate result of the conduct of Defendant KEVIN J.

RAMBOSK, as SHERIFF OF COLLIER COUNTY, Florida, Plaintiff suffered loss of liberty and

freedom, mental and emotional pain and suffering, and loss of capacity for the enjoyment of life.

The losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in

violation of Plaintiff's rights under Florida law.

WHEREFORE, Plaintiff prays:

      i.        Judgment for compensatory damages in excess of $ 15,000 dollars;

      ii.      Cost of suit;

      iii.     Trial by jury as to all issues so triable; and

      iv.    Such other relief as this Honorable Court may deem just and appropriate.

## COUNT V
## FALSE ARREST/FALSE IMPRISONMENT CLAIM AGAINST
## DEFENDANT SPARACINO, INDIVIDUALLY

For his cause of action against Defendant SPARACINO, individually, in Count V, Plaintiff states:

79.     Plaintiff realleges and adopts, as if fully set forth in Count V, the allegations of paragraphs 1 through 31.

80.     Defendant SPARACINO proximately caused Plaintiff's civil commitment in the absence of probable cause to believe that Plaintiff fit the criteria for involuntary commitment or protective custody under Florida Statute § 397.675.

81.     The actions of Defendant SPARACINO constitute false arrest/false imprisonment of Plaintiff under Florida law.

82.     Alternatively to the allegations set forth in Count IV, if the false arrest/false imprisonment of Plaintiff occurred outside the course and scope of Defendant SPARACINO's employment for Defendant KEVIN J. RAMBOSK, as SHERIFF OF COLLIER COUNTY, Florida, or was committed by Defendant SPARACINO in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, the false arrest/false imprisonment of Plaintiff was committed by Defendant SPARACINO in his individual capacity.

83.     As a direct and proximate result of the acts described above, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, and mental suffering.

84.     As a further direct and proximate result of the conduct of Defendant SPARACINO,

Plaintiff suffered loss of liberty and freedom, mental and emotional pain and suffering, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's rights under Florida law.

WHEREFORE, Plaintiff prays:

      i.      Judgment for compensatory damages in excess of $ 15,000 dollars;

      ii.      Judgment for punitive damages;

      iii.      Cost of suit;

      iv.      Trial by jury as to all issues so triable; and

      v.      Such other relief as this Honorable Court may deem just and appropriate.

## COUNT VI
## NEGLIGENCE AGAINST DEFENDANT AZN RESTAURANTS, INC.

For his cause of action against Defendant AZN RESTAURANTS, INC, in Count VI, Plaintiff states:

85.      Plaintiff realleges and adopts, as if fully set forth in Count VI, the allegations of paragraphs 1 through 31.

86.      At all times material hereto, Defendant AZN owed Plaintiff a duty to not make incorrect or false 911 calls, in reckless disregard for the safety and rights of Plaintiff, or under circumstances where Defendant AZN knew or should have known that their conduct was likely to cause harm, including but not limited to the false report that Plaintiff's group was drunk or intoxicated and refusing to leave the premises and kept coming back.

87.      Defendant AZN breached it duty to Plaintiff by calling 911 and falsely reporting that Plaintiff had been asked to leave and kept coming back, when in fact, as Defendant AZN knew or should have known, Plaintiff ushered the group from AZN when they were asked to leave, and returned only to make payment for the group's food and drink (as required by law), including his

own (and his fiance's) tab.

88.     Defendant AZN breached it duty to Plaintiff by falsely reporting on 911 that Plaintiff was amongst those who were drunk or intoxicated, when in fact, as Defendant AZN knew or should have known, Plaintiff was at AZN only briefly, acted responsibly at all times, was apologetic of the conduct of others, and was not drunk or intoxicated.

89.     As a foreseeable consequence of the conduct of Defendant AZN, Defendant KEVIN J. RAMBOSK, as SHERIFF OF COLLIER COUNTY, Florida, responded to the emergency 911 call and, after locating Plaintiff as he was exiting the business (after Plaintiff paid the bar and food tab), took Plaintiff into protective custody under the Marchman Act.  Without the incorrect or false claims made by Defendant AZN to 911 Plaintiff would not have been taken into protective custody.

90.     As a direct and proximate result of the negligence of Defendant AZN, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, and mental suffering.

91.     As a further direct and proximate result of the conduct of Defendant AZN, Plaintiff suffered loss of liberty and freedom, mental and emotional pain and suffering, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's rights under Florida law.

WHEREFORE, Plaintiff prays:

        i.     Judgment for compensatory damages in excess of $ 15,000 dollars;

        ii.    Judgment for punitive damages;

        iii.   Cost of suit;

        iv.   Trial by jury as to all issues so triable; and

        v.    Such other relief as this Honorable Court may deem just and appropriate.

## **DEMAND FOR JURY TRIAL**

92.     Plaintiff demands trial by jury on all issues so triable as of right.

**DATED** this ___26th___ day of May, 2019.

By: ___*s/. Hugh L. Koerner*_____

Hugh L. Koerner
Florida Bar No.: 716952
Attorneys for Plaintiff
Hugh L. Koerner, P.A.
Sheridan Executive Centre
3475 Sheridan Street, Suite 208
Hollywood, FL 33021
Telephone:  (954) 522-1235
Facsimile:   (954) 522-1176
Email: hlklaw@hughkoerner.com
*Attorney for Plaintiff Parker John Detweiler*
TRIAL COUNSEL